

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00651-CV

**IN THE INTEREST OF A.J.L.** and G.M.L., Children

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-00692
Honorable Monique Diaz, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                Velia Meza, Justice

Delivered and Filed: April 8, 2026

AFFIRMED

Appellant Mother, C.A., appeals the trial court's order terminating her parental rights to

G.M.L.[1] We affirm.

### BACKGROUND

The Department's involvement with Mother dates back to 2019, when it received a report

of domestic violence between Mother and A.J.L.'s father, D.L. During that investigation, Mother

tested positive for methamphetamine and cocaine. That case ultimately closed with A.J.L. being

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the child's mother as "Mother," and we refer to the child using initials or as "the child." *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2). The parties corrected the initials of the child in the underlying proceedings to G.M.L.

placed with her father and paternal grandparents. In November 2022, the Department again received a report from a hospital after Mother tested positive for methamphetamine and amphetamines upon admission for the birth of her younger child, G.M.L. In addition to the positive drug test, the Department had immediate concerns about the state of Mother's home, with boxes and clutter precariously stacked high enough to endanger a mobile toddler, and A.J.L.'s outcries regarding her own mental health. Rather than seeking immediate removal, the Department again sought to work with Mother to address the concerns. Yet, Mother continued to test positive for drug use, concerns regarding excessive clutter in the home persisted,[2] and A.J.L.'s mental health deteriorated.

In April 2024, the Department filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship and sought emergency removal of the children. This followed a domestic violence incident reported by A.J.L. to the family-based safety services worker. According to the report, Father threw an unidentified object at Mother, and Mother scratched Father during the altercation. The incident occurred in the immediate presence of G.M.L., who was on the bed in the center of the room until A.J.L. intervened and moved her to a safer location.

At the time of removal, A.J.L. was fourteen years old and G.M.L. was seventeen months old. Because Mother was unable to identify any family members or friends who could serve as a safety-plan placement, the children were placed in multiple settings, both together and separately. Ultimately, A.J.L. was placed with her father, D.L., and G.M.L. was placed in foster care.

---

[2] The children lived with Mother and Father in a home described as "potentially hazardous", particularly to a mobile toddler. Caseworkers testified that boxes and clutter were stacked to the ceiling with only narrow walkways, creating a risk that items could fall and block exits during an emergency. Mother attributed the condition of the home to having a new baby, and Father stated he did nothing as the clutter belonged to Mother alone.

At trial, testimony established that G.M.L. was bonded with her foster parents, who were meeting her physical and emotional needs and were willing to adopt her. In contrast, Mother had not demonstrated sobriety, stability, or behavioral change and had not addressed the concerns that led to removal. The trial court granted conservatorship of A.J.L. to Father, D.L., and named Mother as a possessory conservator. But, as to G.M.L., the trial court terminated Mother's parental rights under Texas Family Code § 161.001(b)(1)(D), (E), (N), and (P) and appointed the Department as permanent managing conservator. Mother now appeals the trial court's ruling, contesting only the sufficiency of evidence supporting a termination under Texas Family Code section 161.001(b)(1)(N) and asserting the Department failed to support the trial court's required findings under Texas Family Code section 161.001(f) and (g).[3] G.M.L.'s Father, D.L., does not appeal.

## CHALLENGE TO TERMINATION OF PARENTAL RIGHTS

A parent-child relationship may be terminated, pursuant to Texas Family Code section 161.001, if the trial court finds by clear and convincing evidence any one predicate ground enumerated in subsection (b)(1) and, in addition, finds that termination is in a child's best interest under (b)(2). TEX. FAM. CODE § 161.001(b)(1)–(2); *see, e.g.*, *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024). Because the trial court terminated Mother's parental rights on multiple grounds, we may affirm on any one ground. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re F.B.C.L.*, No. 04-20-00477-CV, 2021 WL 1649221, at *1 Tex. App.—San Antonio Apr. 28, 2021, no pet.) (mem. op.) ("Only one termination ground—in addition to a best interest finding—is necessary to affirm a termination judgment on appeal.").[4]

---

[3] Section 161.001 was amended during the Eighty-Eighth Legislature to add subsections (f) and (g), effective September 1, 2023, applicable to cases filed on or after that date. Act of May 25, 2023, 88th Leg., R.S., ch. 675, §§ 1, 7-8, 2023 Tex. Gen. Laws 1644, 1644-45 (codified at TEX. FAM. CODE § 262.002(f)). This suit was filed in April 2024.
[4] Had Mother challenged all grounds for termination, even if we can affirm on one ground, normally we would be required to review the record to determine the sufficiency of the evidence to support the trial court's findings under subsections (D) and (E) because termination under those subsections may serve as the basis for a future termination

Here, Mother challenges on appeal only one of the four grounds for termination found by the trial court, that being Texas Family Code section 161.001(b)(1)(N). But, even if we were to find the evidence insufficient to support termination on that ground, we would still be required to affirm the judgment on the other grounds as found by the trial court. "In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination." *In Interest of J.F.G., III*, 500 S.W.3d 554, 558 (Tex. App.—Texarkana 2016, no pet.). For that reason, we need not reach the sufficiency issue as presented by Mother relating to termination under Texas Family Code section 161.001(b)(1)(N).

**TRIAL COURT'S FINDINGS UNDER TEXAS FAMILY CODE 161.001(f)**

We must, however, reach Mother's challenge that the trial court erred by failing to require the Department to plead and prove, with sufficient evidence, that (a) the Department made reasonable efforts to return the child to Mother before commencement of trial and (b) a continuing danger remains in the home that prevented the trial court from returning G.M.L. to Mother.[5] *See* TEX. FAM. CODE §161.001(f).

**Adequacy of the Department's Pleadings**

First, Mother asserts the Department did not plead in support of such findings. We disagree. Section 8 of the Department's Original Petition reads:

> 8.1. The Department made reasonable efforts, consistent with time and circumstances prior to the children's removal and prior to the placement of the children in foster care, to prevent or eliminate the need for removal of the children

---

of parental rights proceeding as to other children. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019); *see also In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022). However, Mother has waived any challenge to the trial court's termination under subsections (D) or (E) by not challenging them on appeal. We, therefore, need not reach those issues.

[5] Initially, Mother challenged on appeal the trial court's failure to make the requisite findings under Texas Family Code section 161.001(f) and (g). Finding merit on that issue, we abated the appeal and returned the matter to the trial court, affording the trial court an opportunity to make additional findings. It did so. With regard to Texas Family Code section 161.001(f) and (g), we hold the trial court's findings are sufficiently specific to meet the requirements of the statute. *See In re Y.K.*, 722 S.W.3d 273, 281 (Tex. App. – Fort Worth 2025, no pet.). Thus, we are left, then, with Mother's only challenge remaining - that the record fails to support such findings.

and the Department has made reasonable efforts to make it possible for the children to return home.

8.2. The Department will make reasonable efforts to eliminate the need for the children's removal and to enable the return of the children to the parents.

Further, under Section 13 of its Original Petition, the Department pleaded:

13.1. The Department will make reasonable efforts to eliminate the need for the children's removal and to enable the return of the children to a parent.

13.2. If the children cannot be safely reunified with either parent, then the Department will seek alternative relief as described in the sections below.

Both of these sections give fair notice to Mother that the Department will seek to prove it made reasonable efforts to reunify her with her child.

Mother also contends the Department did not plead for the required finding under Texas Family Code 161.001(f) that "a continuing danger" prevents the return of the child to Mother. Specifically, Mother points out that the specific ground she challenges on appeal, Texas Family Code section 161.001(b)(1)(N), does not require the showing of a continuing danger to the child that prevents return. Thus, she contends Texas Family Code section 161.001(f) poses a required finding beyond that considered for termination by the Department.

What Mother misses is that the other grounds relied upon by the Department do include the required findings. Specifically, the Department pleaded for, and the trial court granted termination based on Texas Family Code section 161.001(b)(1)(D) which requires a finding that Mother "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex Fam. Code §161.001(b)(1)(D). By utilizing the present tense of "endanger," the legislature clearly intended for the danger to not be abated and for termination to address the safety of the child as a result. The same goes for the Department's pleading for termination under Texas Family Code section

161.001(b)(1)(E), which requires a finding that Mother "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Again, note the present tense of the word "endangers." Finally, the Department pleaded for and the trial court granted termination of Mothers rights under Texas Family Code section 161.001(b)(1)(P) which requires a finding that Mother used a controlled substance in a manner that endangered the health or safety of the child and either failed to complete a court-ordered substance abuse treatment program or, after completion of one, continued to use.[6] We can assume that a parent who used drugs "in a manner that endangered the health or safety of the child" and who continues to do so poses a continuing danger to the child. To sum it all up, the Department pleaded:

> 14.1.1. Pursuant to §§ 153.005 and 263.404, Texas Family Code, *if the children cannot safely be reunified with either parent*, but may be permanently placed with a relative or other suitable person, the Department requests that the Court appoint the person as permanent sole managing conservator of the children; *if the children cannot safely be reunified with either parent* or permanently placed with a relative or other suitable person, the Department requests that the Court appoint the Department as permanent sole managing conservator of the children.

Suffice it to say, we feel it is abundantly clear that the Department provided fair notice to Mother that they would be seeking to show that they used reasonable efforts to reunify her with her child and that, if termination was the result, it would be because a continuing danger existed in the home that prevents the child's return.

---

[6] The trial court's judgment, entered May of 2024, referred to Texas Family Code section 161.001(b)(1)(P) as a ground for termination stating that Mother "used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health and safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance, pursuant to § 161.001(b)(1)(P), Texas Family Code." In 2025, that statute was amended so that Section 161.001(b)(1)(P) is now Section 161.001(b)(1)(O), due to the deletion of the previous subsection (b)(1)(O). Acts 2025, 89th Leg., R.S., Ch. 211 (H.B. 116), Sec. 2, eff. September 1, 2025.

**Sufficiency of Evidence**

That leaves us with the question of whether the evidence admitted at trial supports the trial court's findings under section 161.001(f), which requires the trial court to find by clear and convincing evidence that "the Department made reasonable efforts to return the child to the parent before commencement of a trial on the merits and despite those reasonable efforts, a continuing danger remains in the home that prevents the return of the child to the parent." TEX. FAM. CODE § 161.001(f). Clear and convincing evidence is proof that will produce in the fact finder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

We must review the sufficiency of the evidence under subsection (f) as it is now an additional finding required to support an order for termination on grounds listed under Texas Family Code section 161.001(b)(1). *See In re Y.K.*, 722 S.W.3d 273, 280 (Tex. App. – Fort Worth 2025, no pet.); *In re K.N.S.*, No. 12-25-00171-CV, 2025 WL 3724545, at *9 (Tex. App. – Tyler Dec. 23, 2025, no pet.); *In re M.B.*, No. 14-25-00418-CV, 2025 WL 3275376, at *7 (Tex. App.— Houston [14th Dist.] Nov. 25, 2025, no pet.)

To determine whether this heightened burden of proof is met, we employ a heightened standard of review by asking whether a factfinder could reasonably form a firm belief or conviction about the truth of the allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App. – San Antonio 2013, no pet.). Under this standard, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We do not reweigh credibility issues, and we defer to the factfinder's

determinations so long as they are not unreasonable. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

When reviewing the sufficiency of the evidence, we apply well established standards of legal and factual sufficiency. *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App. – San Antonio 2020, pet. denied). In a legal sufficiency review, we view the evidence in the light most favorable to the finding and assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard evidence that a reasonable factfinder could have disbelieved. *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a factual sufficiency review, we consider the entire record and determine whether any contrary or disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Id.* at 266.

**Reasonable Efforts under Section 161.001 (f)**

In assessing whether the Department proved "reasonable efforts to return the child," we may look to case law addressing reunification efforts under Texas Family Code section 161.001(b)(1)(N). *See In re K.N.S.*, 2025 WL 3724545, at *9 (recognizing that, when enacting subsection (f), the Legislature is presumed to have acted with knowledge of the existing judicial construction of "reasonable efforts to return" under subsection (N)). Relevant considerations include whether the Department created a family service plan tailored to the issues that led to removal, made referrals for and provided services to assist the parent in completing that plan, facilitated visitation and worked to make visits successful, provided transportation or virtual services when requested, and attempted to identify or pursue relative placements. *See In re of Y.K.*, S.W.3d at 273.

First, the record reflects the Department's involvement with Mother predating removal and its repeated efforts to address safety concerns while keeping the children out of care. Before removal, the Department worked with Mother through family-based safety services after concerns arose regarding substance abuse, domestic violence, and the condition of the home. The Department offered Mother substance abuse assessments, counseling, parenting services, and drug testing, and attempted to implement a safety plan that would allow the children to remain in her care but supervised by others while she focused on addressing the Department's concerns. But, Mother was unable to identify any relative or support person who could assist with supervision.

The Department sought emergency removal only after a domestic violence incident occurred in April 2024 in the immediate presence of the children. After removal, the Department developed a family service plan tailored to the reasons for removal, including Mother's substance abuse, mental health concerns, domestic violence, and instability. A caseworker reviewed the plan with Mother and explained the required service. But, while acknowledging that she understood the plan, Mother refused to sign it. The Department nevertheless made referrals to services, made many services available virtually, and offered transportation to Mother to ensure her participation. Even when Mother was unsuccessfully discharged from therapy and after she unsuccessfully completed parenting classes, the Department made numerous attempts to get her re-engaged, explaining that the family service plan was not simply a checklist and Mother needed to prioritize engagement and show improvement.

The Department also attempted to preserve the parent-child relationship through regular visitation. When the visits were routinely interrupted because of Mother's conduct, the Department asked the visitation staff to break protocol and stop calling security so that visits could continue and met with staff to address concerns. Even when some staff refused to work with Mother, the

Department made sure visits could continue by having the caseworker attend. When the court ordered a drug test to be conducted at the courthouse by the end of the day to determine if visits should continue, the Department provided a car and driver to Mother to ensure she could meet the court's requirement. But, Mother made the driver wait for two hours, making it impossible to get her to the courthouse in time. Even so, the Department agreed to have the test done at its office instead. Only because Mother's test came back positive for methamphetamine use did visits terminate.

Based on the record before us, the evidence is legally and factually sufficient to support the trial court's finding that the Department made reasonable efforts to reunify the child with Mother prior to commencement of the trial.

**Continued Danger to the Children**

The record also supports the trial court's finding that Mother failed to make changes necessary to eliminate the dangers that led to removal. Throughout the case, Mother was requested to submit to drug testing twenty-seven times, testing positive on three occasions, during and after outpatient treatment, and refusing drug testing on fourteen occasions. "A trial court may infer drug use from a parent's refusal to submit to testing." *In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied). "[E]vidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well being." *In re S.A.*, 665 S.W.3d 59,70 (Tex. App. – Tyler 2022, pet. denied). The Department requested that Mother re-engage in out-patient substance abuse treatment following a positive drug test, but she did not do so.

Further, despite completing some services, Mother failed to benefit from them. Mental health providers, attempting to help with anger management and self-esteem issues, reported that Mother minimized her substance abuse, refused to take responsibility for her behavior, and made no progress despite months of therapy, resulting in a discharge from therapy services and domestic violence classes. Mother attended parenting classes, but according to the provider, did not meaningfully engage and did not demonstrate improvement, resulting in an unsuccessful completion of the service. "A court may consider a parent's failure to complete a service plan as part of the endangering conduct analysis." *In re S.A.*, S.W.3d, at 71.

Mother also failed to demonstrate improved parenting behaviors or stability. Visits with A.J.L. and G.M.L. remained chaotic and mentally unsafe, requiring constant intervention. Multiple visitation monitors refused to continue supervising visits.

Finally, Mother failed to demonstrate financial stability or improved living conditions. Despite repeated interventions by the Department, she did not obtain employment during the pendency of the case, acknowledged at trial that if the children were returned to her care she would need to rely entirely on friends or family for financial support, and did not present the requested evidence that the condition of her home improved.

Ultimately, at the time of the trial, concerns that led to removal – including substance abuse, instability, and unsafe conditions – remained unresolved. Based on the record before us, we hold the evidence is legally and factually sufficient to support the trial court's findings that a continued danger remains in the home that prevents the reunification of the child with Mother.

## CONCLUSION

Because Mother waived a challenge to the statutory grounds for termination as found by the trial court and because we hold the trial court had sufficient evidence to find that the

Department made reasonable efforts to return the child but did not do so because of a continuing danger in the home, we affirm the trial court's order.

Lori Massey Brissette, Justice